# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) CRIMIAL No. 07-30109-WDS |
| LAMORRIS T. WILFORD, | ) |
| Defendant. | ) |

## MEMORANDUM & ORDER

**STIEHL, District Judge:**

Before the Court is defendant's motion to suppress statements (Doc. 28) to which the government has filed a response (Doc. 35) and a supplemental response (Doc. 49). The Court held an evidentiary hearing on the motion and took the matter under advisement pending further briefing by the parties (Docs. 62 & 64).

## BACKGROUND

The defendant, Lamorris T. Wilford, is charged by the grand jury in a two count indictment with conspiracy from March 1, 2007, to July 26, 2007, to commit robbery of an armored car belonging to Olin Community Credit Union, in violation of 18 U.S.C. § 371 and with theft of bank funds through force, violence and intimidation, on July 26, 2007, in violation of 18 U.S.C. §2113(a). The defendant was questioned by law enforcement on July 26, 2007, the date of the alleged robbery, which led to the defendant's confession. The defendant seeks suppression of the statement he gave on the grounds that he was suffering from the ill effects of passing a kidney stone, was in extreme pain and, therefore was not able to make a voluntary and knowing confession.

At the evidentiary hearing the government introduced evidence in the form of the

videotape taken of the defendant's interview and statement, which the Court has reviewed.[1] The Court also presented the live testimony of Robin Lynn Moore, a nurse at Gateway Regional Medical Center, and of Officer Marcos Pulido of the Alton Police Department.

Moore stated that the defendant's chart indicates that he was admitted to the emergency room on July 23, 2007, at around 9:30 p.m. for flank pain relating to kidney stones. At the time of his admission, he rated his pain as a 10, but by his discharge two hours later after receiving 25 milligrams of Demerol, 30 milligrams of Toradol and 2 milligrams of Dilaudid, all pain medications, his pain level was a zero. Moore testified that the pain medications would typically last three to four hours, and that the defendant was given prescriptions for Cipro, an antibiotic and Vicodin, a pain medication upon his discharge.

Officer Marcos Pulido testified that he has been on the police force approximately two and one-half years and has had training in alcohol and drugs, including detecting persons who are under the influence of alcohol or drugs. He stated that on July 26, 2007, he and Alton Police Detective Pete Vambaketes met the defendant about 9:30 in the evening. They had gone to 1602 Second Street in Madison, Illinois, to identify a subject nicknamed "Mo." The defendant responded when they asked for "Mo." He got off the porch and came to the officers. Officer Pulido did not notice any smell of alcohol or anything that indicated that the defendant was under the influence. The defendant did not appear to be in any pain. He was not crying out; did not vomit; did not have the dry heaves; and did not have any trouble communicating with the officers.

A background check of the defendant revealed that he had an outstanding warrant in St.

---

[1] When the Court reviewed Government's Exhibit 1, the DVD had a technical problem. Therefore, the Court requested that counsel for the government provide another copy of the interview. That copy has now been marked Government's Exhibit 1A and will, along with Exhibit 1, be made a part of the record.

Clair County, so Officer Pulido took the defendant into custody. The officers found five bags of marijuana on the defendant at the time of his arrest, but did not believe that the defendant was intoxicated or under the influence. The defendant had a cane which was taken with him when he was placed in custody. During his transportation, the defendant did not exhibit any signs of distress or a need for medical care, nor did he ask for any medical assistance. When they arrived at the Alton Police Department, the defendant was taken to Interview Room 3 which has a small table, with three chairs. The video recording equipment was activated and Officer Pulido and Detective Vembaketes went into the room to interview the defendant. Officer Pulido stated that the defendant did not appear to him to be under the influence of any controlled substance nor did he appear to be drunk. He did not ask to go to the hospital, but did tell them that he had been recently been treated for kidney stones. The Court's review of the tape reveals that before the interview began the defendant stated that he needed a cigarette, which was provided to him, that he was in "pain," which was not specified, and that he was "scared." He stated several times during the interview that he was "scared" or "terrified" or "frightened," and also told the interviewing officers that he had been hospitalized and was on pain medication.

The defendant was given his *Miranda* warnings and signed the warning form (Govt. Ex. 2.) The defendant asked Officer Pulido some questions before signing the form, and they went over the form at least two times before the defendant signed it. The defendant did not ask to speak with a lawyer. He did ask to go to the bathroom two times, which was allowed and he was offered something to drink at the beginning of the interview.

The interview lasted approximately one and one-half hours. Officer Pulido testified that throughout the interview the defendant did not appear to be in any pain, and the Court's review of the videotape confirms that the defendant did not appear to be in pain, under the influence of

3

drugs or alcohol, or in any manner unable to understand and participate in the interview process. Officer Pulido stated that the defendant did have a limp, and used a cane as he walked into the interview room, but he did not appear to be in any general pain. The defendant asked questions at the beginning of the interview, and was able to give a cogent statement of his involvement in the events that led to this indictment. The Court further notes that at the end of the interview, the defendant was asked by Officer Pulido if he had been mistreated or anything of that nature, and he replied that he had not.

## **DISCUSSION**

The defendant asserts that his statement should be suppressed because at the time of his interview and statement the defendant was suffering from the ill effects of painful kidney stones, and was on prescription painkillers[2].

The Seventh Circuit has held that "[a] confession is voluntary if, in the totality of circumstances, it is the 'product of a rational intellect and free will and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics that have overcome the defendant's free will.'" *United States v. Huerta*, 239 F.3d 865, 871 (7th Cir. 2001) (*quoting United States v. Dillon*, 150 F.3d 754, 757 (7th Cir. 1998)); *See also, United States v. Gillaum*, 372 F.3d 848, 856 (7th Cir. 2004). "[C]oercive police activity is a 'necessary predicate to the finding that a confession is not "voluntary" within the meaning of the Due Process Clause of the Fourteenth Amendment.'" *Huerta*, 239 F.3d at 871 (*quoting Colorado v. Connelly*, 479 U.S. 157, 167(1986)). Factors relevant to a determination that police conduct is coercive include "the defendant's age, education, intelligence level, and mental state; the length of the defendant's

---

[2]The defendant's memorandum states that he was on codeine and oxycodone, but the testimony at the hearing was that the defendant was given prescriptions for Cipro, an antibiotic and Vicodin, the trade name for hydrocodone, a pain medication.

4

detention; the nature of the interrogations; the inclusion of advice about constitutional rights; and the use of physical punishment, including deprivation of food or sleep." *Id.*

"In evaluating whether a suspect voluntarily waived his *Miranda* rights, we consider the same factors that we considered above in assessing the overall voluntariness of a confession." *Ruvalcaba v. Chandler,* 416 F.3d 555, 562 (7th Cir. 2005) (citations omitted). Applying this standard, the Court **FINDS** that the defendant voluntarily chose to waive his *Miranda* rights, and cooperate with and give a statement to law enforcement.

Although there is evidence that the defendant had been treated for and was on pain medication for kidney stones, the Court **FINDS** that the testimony of Officer Pulido that the defendant did not appear to be adversely impaired by his medical condition is corroborated by the videotape of the defendant's interview. Simply put, there was nothing in that videotape indicating that the interviewing officers had any reason to believe that the defendant was so medically compromised that his statement would be suspect. The only things in the record wo which the defendant points were his initial statement that he "was in pain" and his later comment that he had been previously hospitalized for kidney stones. Also, near the end of the interview the defendant said that he needed another cigarette because he was "hurting," and going through "some things" at that time. Although these might, in the presence of other indicators, like a lack of coherence or understanding, trigger a concern with the interviewing officers, those other indicators simply did not exist in this case.

The Court's review of the video reveals that the defendant simply does not appear, nor act as if he was suffering from any overborne will, or the ill effects of any pain medication. He was cogent, appropriately responsive, he joked with the officers, asked pertinent questions, and was able to detail his involvement in the events surrounding the armored car robbery. In sum, he

was not demonstrating any signs which would have led the officers to believe his confession was involuntary.

Accordingly, the Court **FINDS** that there is no support for the defendant's contention that he was so impaired by pain so as to render his confession involuntary. Therefore, the Court **DENIES** defendant's motion to suppress statement on all grounds raised.

**IT IS SO ORDERED.**

**DATED: January 9, 2008.**

                                          **s/ WILLIAM D. STIEHL**
                                              **DISTRICT JUDGE**